UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-01050-WYD

LORI E. BUTTERFIELD,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,[1]

      Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's May 16, 2004, application for Disability Insurance Benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 401-433.  Plaintiff alleges disability since July

1, 2002, based on fibromyalgia, irritable bowel syndrome, depression, and myofascial

pain.  (Transcript ["Tr."] 19.)  Her application was denied initially and on review.

      After a hearing on August 18, 2005 (Tr. 284-303), an Administrative Law Judge

["ALJ"] issued a decision on December 5, 2005, that Plaintiff was not disabled.  (*Id.* at

18-25.)  The Appeals Council denied Plaintiff's request for review on May 8, 2006.

These decisions are discussed in more detail in the following section.  (*Id.* 5-7.)  The

case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

_____

     [1]  Michael J. Astrue, the current Commissioner of Social Security, has been substituted for
former Commissioner Jo Anne B. Barnhart pursuant to FED. R CIV. P. 25(d)(1).

II.     THE UNDERLYING DECISIONS

   A.     The ALJ's Decision

   The ALJ noted that Plaintiff was 39 years old on the date of decision with a post

secondary education.  (Tr. 19.)  Turning to the five-step sequential evaluation, the ALJ

found at step one that while Plaintiff had worked at various jobs after the alleged onset

date of disability (July 1, 2002) through June 2004, these were "unsuccessful work

attempts" as she stopped working due to her symptoms.  (*Id.*)  Thus, they could be

disregarded.  (*Id.*)  As to the latest work activity that ended in March 2005, the ALJ

found that this did not constitute substantial gainful activity due to the limited hours and

earnings.  (*Id.*)

   At step two, the ALJ found that Plaintiff had severe impairments of fibromyalgia,

chondromalacia patella at the knees and obesity.  (Tr. 19-20.)  He found that her claim

of "myofascial pain" best describes symptoms from the fibromyalgia and does not

represent another medically determinable impairment.  (*Id.* at 19.)  He also found that

Plaintiff's depression, anxiety and irritable bowel syndrome were not severe.  (*Id.* at

20.)  At step three, he found that the severe impairments did not meet or equal any

Listing, "including those in the musculoskeletal or immune systems."  (*Id.*)

   The ALJ then assessed Plaintiff's residual functional capacity ["RFC"] and

credibility.  (Tr. 20-23.)  First, as to credibility, the ALJ stated that while he found

Plaintiff "partially credible, the weight of the evidence convinces him that the claimant's

symptoms are sufficiently controlled to allow for the sustained performance of some

types of competitive work."  (*Id.* at 20-21.)  He found that Plaintiff was credible only to

the extent that her impairments comport with the RFC assessment. (*Id.* at 24.)  As to

RFC, the ALJ found Plaintiff has the RFC "to perform work-related activities except for

work involving more than lifting/carrying 10 pounds" and that she is limited "to standing

and/or walking about 2 of 8 hours." (*Id.* at 23, 24.)  The ALJ further found that Plaintiff

"can sit throughout the workday with normal work breaks." (*Id.* at 23.)

Proceeding to step four, the ALJ found that Plaintiff had past relevant work as a

configuration manager senior analyst, administrative support/data analyst, pre-

certification analyst, and senior desktop publishing specialist. (*Id.* at 23-24.)  The ALJ

found that the work in those jobs involved sitting for the bulk of the day (7 ½ hours) with

minimal standing/walking and lifting." (Tr. 23.)  He further found that Plaintiff's

impairments do not prevent her from performing this work.  Accordingly, the ALJ found

that Plaintiff could perform her past relevant work and that she was not disabled at step

four of the sequential evaluation.

The ALJ also found, however, that even if Plaintiff were limited to sitting 6 of 8

hours consistent with sedentary work and past relevant work were ruled out, Plaintiff

would still not be disabled. (Tr. 24.)  He concluded that based on her education, age,

work experience, and medical limitations, Rule 201.28 of the Medical-Vocational

Guidelines would direct such a finding. (*Id.*)

B.     The Appeals Council's Decision

After the ALJ's decision was issued, Plaintiff tendered new and additional

evidence for the Appeals Council to consider, including additional medical and

employment records. (Tr. 8.)  The Appeals Council found no reason under its rules to

review the ALJ's decision.  (*Id.* 5.)  Accordingly, it denied Plaintiff's request for review.

(*Id.* 5-8.)

III.    ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of

evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988).  "Evidence is not substantial if it is overwhelmed by other

evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d

1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487

(10th Cir. 1993).  Although the court should carefully examine the record, it may not

weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

    B.    Whether the ALJ's Decision is Supported by Substantial Evidence

My review of the record reveals a number of errors that require the

Commissioner's decision to be reversed and remanded for a rehearing.  I address

these below.

1.      Whether the ALJ's Finding at Step One that Plaintiff's Most Recent Work Attempts Were "Unsuccessful Work Attempts" Can Be Reconciled with the Finding that She Is Not Disabled

Plaintiff first argues that the crux of her disability claim is her inability to *sustain* regular employment, even at sedentary occupations which do not involve strenuous physical activity, and that the ALJ erred in not properly considering this.  She also argues that the ALJ's finding at step one that Plaintiff's most recent work attempts were "Unsuccessful Work Attempts" cannot be reconciled with the finding that she is not disabled.

I agree with Plaintiff that it is not only the ability to obtain employment, but "the ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" that is relevant to the determination of disability.  See Soc. Sec R. 96-8p(1), 1996 WL 374184, at *1.  The phrase "regular and continuing basis" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*.  As the Tenth Circuit noted, "'[a] finding that a claimant is able to engage in substantial gainful activity requires . . . a determination  that the claimant can *hold* whatever job he finds for a significant period of time.'"  *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir.  1994) (emphasis in original) (quotation omitted).

In this case, the ALJ made findings that appear contradictory with respect to Plaintiff's ability to sustain work.  Specifically, the ALJ found at step one that while Plaintiff had worked at various jobs after the onset date of disability, these were "unsuccessful work attempts" as she stopped working due to her symptoms.  (Tr 19.)  Thus, they could be disregarded.  (*Id*.)  However, he held that her inability to sustain

these jobs did not demonstrate an inability to perform sedentary work.  (*Id.*)  The AlJ

stated that in ultimately determining disability, "a more thorough analysis of the issue

would be required. "  He also explained that while Plaintiff "'failed' to sustain post July

2002 work that involved sitting for most of the day, this does not persuade him that she

could maintain work at that level of exertion." (*Id.*)  This is because he need not accept

that Plaintiff's symptoms are severe and because symptoms alone are never sufficient

to establish disability.  (*Id.*)

   I find that the ALJ's explanation does not adequately explain the contradiction.

First, as to the statement that he need not accept that Plaintiff's symptoms are severe,

the ALJ found that Plaintiff had severe impairments.  As such, these impairments

necessarily had symptoms which had more than a minimal effect on Plaintiff's ability to

work.  *See Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. 2004)

(quoting Soc. Sec. R. 85-28, 1985 WL 56856, at *3).  Second, it is undisputed from the

ALJ's finding at step one that Plaintiff was unsuccessful in the sedentary type jobs she

attempted post July 2002 due to those symptoms.  Indeed, the term "unsuccessful work

attempt" ["UWA"] as found by the ALJ at step one is a term of art which requires that a

claimant prove that her impairment forced her to stop working or to reduce the amount

of work done.  20 C.F.R. § 404.1574(c).[2]  These issues were not adequately

addressed or taken into account by the ALJ in his decision.

---

[2] *See also* Soc. Sec. R. 84-25, 1984 WL 49799, at *3 (1984) (UWA criteria as to duration and conditions of work requires a finding that the work must have ended "due to the impairment or to the removal of special conditions related to the impairment that are essential to the further performance of work".)

A claimant's prior unsuccessful attempts to work have been found to be relevant to whether a claimant can work for purposes of disability. In *Washington v. Shalala*, the claimant unsuccessfully attempted to work as a barber. *Id.*, 37 F.3d at 1441. The Tenth Circuit found that "[b]ecause the only evidence of record concerning plaintiff's barbering 'work' indicates that plaintiff was not performing that work at the level necessary for substantial gainful activity, the ALJ's determination that plaintiff could work without deteriorating under stress is not supported by substantial evidence in the record." *Id.* Other cases have also attached significance to unsuccessful work attempts in the disability analysis. *Hierstein v. Chater*, No. 96-6233, 1997 WL 158177, at *3 (10th Cir. 1997) (finding that "reliance on. . . abortive work efforts as evidence of *non* disability" is contrary to controlling law and that "the problems encountered by plaintiff in these attempts. . . appear to reflect the real-world impact of his recognized psychological impairments"); *Coulter v. Weinberger*, 527 F.2d 224, 229 (5th Cir. 1975) ("'sporadic and transitory activities may demonstrate not [a claimant's] ability, but his inability to engage in substantial gainful activity'") (quotation omitted).

In this case, all of Plaintiff's UWAs were at sedentary type jobs with physical demands similar to her past relevant work. Indeed, it appears that the mental demands of those jobs were actually lower than her past job at Dell Computer, which was highly skilled. The ALJ's finding that each of the work attempts constituted UWA necessarily constitutes a finding that Plaintiff was repeatedly unable to sustain sedentary work. Despite this, the ALJ concluded without explanation that Plaintiff retains the RFC to perform her past relevant work at step four and/or other sedentary work (even if she

could not perform her past relevant work).  I agree with Plaintiff that this is a contradictory finding that is not adequately explained by the ALJ.

This is particularly true in light of the uncontroverted evidence in the record that Plaintiff was unable to sustain attendance and be punctual while working for multiple employers.  For instance, Plaintiff stopped working at Dell Computer because she was missing work approximately one day per week, was late to work on a regular basis, and was making numerous errors.  (Tr. 293.)  Although her manager was willing to accommodate her for a period of time, eventually she was reprimanded.  Rather than face a termination, she requested and was granted disability leave.  She had similar problems when she attempted to work at Hewlett Packard.  (*Id*. 295-96.)  A few months later at computer-related job, she "got fired from that job for absenteeism, being late. Not able to fulfill my duties and the job."  (*Id*. 296-97.)  Her experience as a customer service representative was no different.  She was able to sustain her schedule for a period, and then started missing time from work.  (*Id*. 298.)  Eventually she received a warning from the employer.  (*Id*. 271-72.)   Further, treating physician Dr. Zyskowski substantiated from a medical perspective that Plaintiff would miss work on a periodic basis due to her impairments.  (*Id*. 231-35, 238.)[3]

.       It is difficult to see how the ALJ can reconcile a finding that Plaintiff was not disabled at any point when there is affirmative evidence in the form of repeated UWAs that demonstrates an inability to perform work on a sustained basis.  The ALJ did not

---

[3]  The ALJ's treatment of the treating physician's opinions is discussed in more detail in the following section.

discuss or explain this evidence in analyzing whether she was able to sustain

employment.  This was error.  *See Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006)

("'in addition to discussing the evidence supporting his decision, the ALJ also must

discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects.'") (quotation omitted).

Based on the foregoing, I find that the ALJ's finding that Plaintiff could perform

her PRW or other sedentary work is not supported by substantial evidence.  Thus, a

remand to the Commissioner is required so that the ALJ can properly consider and

weigh the UWAs and Plaintiff's ability to perform sustained work of any kind, including

either her PRW or other sedentary work.[4]

2.   Whether the ALJ Properly Assessed the Opinions of the Treating Physicians

Plaintiff also argues that the ALJ erroneously dismissed the opinions of three

treating physicians when formulating Plaintiff's RFC.  The Commissioner must give

controlling weight to the opinion of a treating physician if the opinion is supported by

medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in the record.  *Hamlin v. Barnhart*, 365 F.3d

1208 (10th Cir. 2004).  The ALJ is required to give "good reasons" for the weight he or

she assigns to the treating physician's opinion.  20 C.F.R. 404.1527(d)(2).  If the ALJ

_____

[4]  I reject the Commissioner's argument that any error on the part of the ALJ in finding that Plaintiff was not disabled because she could perform her PRW was harmless since the ALJ also found that other work existed in significant numbers in the national economy that Plaintiff could perform.  The past work that Plaintiff had been unsuccessful at was sedentary type work.  As noted in this Order, the ALJ's finding that Plaintiff could perform other sedentary type work which existed in significant numbers in the economy failed to take into account her UWA's or her ability to perform sustained work at that level.

rejects a treating physician's opinion, he must provide "specific, legitimate reasons for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Turning to the evidence in this case, treating physician Dr. Eady opined in July, August and September 2002 that Plaintiff was unable to work on a short term basis. (Tr. 150, 152, 153.)  Dr. Eady found that this was due, among other things, to severe pain and the inability to sit for a prolonged period of time.  (*Id.* 150.)  She thought, however, that Plaintiff would most likely to be able to return to work on October 1, 2007. (*Id.*)  She also stated that "[t]here are no therapy notes or intake evaluations to include, and no psychological tests were performed."  (*Id.*)  Ultimately, of course, Plaintiff did not return to work.  She began treating with Dr. Zyskowski in 2003.

In March 2004, Dr. Zyskowski wrote a letter stating that while Plaintiff was generally able to work 40 hours per week, she would "require intermittent absences because of a flare of her disease", maybe occurring once every two or three weeks. (Tr. 238.)  This was supported by his notes.  (*Id.* 240.)  In September 2004, Dr. Zyskowski completed a physical functional capacity assessment finding that Plaintiff had multiple trigger points, nonrestorative sleep, chronic fatigue, panic attacks and depression.  (*Id.* 231.)  He imposed the following limitations: sitting, standing and walking 1-2 hours in an 8 hour day, with the need to alternate sitting, standing and walking at will, and the need to lie down at unpredictable intervals during a work shift. (*Id.* 232-34.)  He also found that Plaintiff's experience of symptoms would frequently be severe enough to affect attention and concentration, that Plaintiff suffered drowsiness

from her medication, that her impairments were expected to last at least 12 months, and that her impairments would cause unexpected absences from work. (*Id.* 235.)

The ALJ rejected the findings of both Dr. Eady and Dr. Zyskowski. As to Dr. Eady, the ALJ noted that while Dr. Eady recommended disability, there was no accompanying objective data that supported this. (Tr. 21.) The ALJ also stated:

> Other notes from Dr. Eady/Cornerwood state in conclusory fashion that the claimant has fibromyalgia that had not responded to multiple treatments. Notwithstanding the responses on the forms, the progress notes suggest that the claimant benefitted from physical therapy.

(*Id.*) (citing Exhibit 8F).

As to Dr. Zyskowski, the ALJ noted certain findings in March 2004 and stated:

> In sum, the aforementioned entries from Dr. Zyskowski show good range of motion in all realms. They relate improvement in symptoms. They relate Dr. Zyskowski's speculation that the claimant may have fibromyalgia flare-ups, but his belief that she can work. The ALJ recognizes the claimant's testimony that she asked Dr. Zyskowski to write the March 11, 2004 letter clearing her for work. However, the ALJ does not believe that he would have done so had that not reflected his opinion. Further, that letter was consistent with other reports of stability by Dr. Zyskowski.
>
> Dr. Zyskowski's latest entries, in September and December 2004 include claimant's complaints of reasonably severe fibromyalgia, notation that she looks tired, but unremarkable examination, save for trigger point tenderness over the shoulders.
>
> The ALJ rejects Dr. Zyskowski's opinion as expressed September 2004 on a form addressing the claimant's abilities to do work related physical activities. No objective data is reported, yet Dr. Zyskowski assesses that the claimant has sitting, standing and walking capacities of only 1-2 hours each day. . . These responses go well beyond even the claimant's contemporaneously reported subjective history to Dr. Zyskowski. They are not consistent with the previous notes or opinions or with the other medical evidence.

It appears to the ALJ that the claimant's fibromyalgia, as well as her knee condition, obesity and general fatigue, would limit her to standing and/or walking about 2 of 8 hours.  The ALJ finds that she can sit throughout the workday with normal breaks and can lift at least 10 pounds (even Dr. Zyskowski's September 2004 assessment is consistent with the latter.)

(Tr. 23.)

Turning to my analysis of the medical evidence, I first find error with the ALJ's finding as to Plaintiff's RFC in the last referenced paragraph.  While the ALJ rejects certain limitations imposed by treating physicians Drs. Eady and Zyskowski, he does not state what medical evidence he relied upon in assessing Plaintiff's RFC.  This is error that requires a remand to the Commissioner.  *See Fleetwood v. Barnhart*, No. 05-6373, 2007 WL 18922, at *3 (10th Cir. 2007) ("An ALJ must make specific RFC findings. . . .Those findings must be supported by substantial evidence") (citing *Haddock v. Apfel*, 196 F.3d 1084, 1088-89 (10th Cir. 1999); Soc. Sec. R. 96-8p, 1996 WL 374184, at *7); *Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. 2005) (remanding the case where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding" and where the court was unable to determine what evidence the ALJ relied on in connection with the RFC).

I also find that the reasons given by the ALJ to reject the findings of Dr. Eady as well as the September 2004 assessment of Dr. Zyskowski are not supported by substantial evidence.  As to Dr. Eady, the ALJ rejected her findings because they were not supported by objective findings and because Plaintiff was benefitting from physical therapy.  (Tr. 21.)  The finding that there is no objective data near the time of alleged

-12-

onset ignores the fact that on July 12, 2002 (twelve days after onset) Dr. Eady noted "trap[ezius], paravertebral, thoracic muscles spasmed, tender to palpation, decr[eased] ROM (range of motion)." (Tr. 156.)  Further, Dr. Eady noted that Plaintiff had begun working at home, which had decreased her stress level, but not affected her pain level. (*Id.* 145.)  Second, the ALJ's findings about Plaintiff's gains from physical therapy were exaggerated.  The record shows Plaintiff reported "that interventions for the fibromyalgia helped *for approximately one day* by 'lowering the intensity.'" (*Id.* 134) (emphasis added.)  One day of temporary relief from therapy does not contradict Dr. Eady's opinions that Plaintiff has significant limitations.[5]

The ALJ also found that the record was devoid of findings of trigger point tenderness that is the foundation for a diagnosis of fibromyalgia.  (*Id.* 21.)  This is not supported by substantial evidence, as the record notes at least twelve separate references to trigger points or tenderness on examination.  (Tr. 128, 164, 156, 220-222, 231, 243, 242, 241, 240, 268.)  Further as to fibromyalgia, it must be noted that no treating physician has ever disputed that Plaintiff suffers from fibromyalgia and has significant tenderness to palpation.  Indeed, the ALJ himself recognized that this was a severe impairment.  Based on the foregoing, it is unclear why the ALJ made the finding that the record is devoid of evidence that supports the fibromyalgia diagnosis.

_____

[5]  The Commissioner argues that the ALJ was permitted to reject Dr. Eady's assessment of Plaintiff's disability because it was only for a three month period of time.  However, the ALJ did not make this finding or rely on this as a basis to reject Dr. Eady's opinion.  Thus, it is not a basis to affirm the ALJ's decision.  *Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985).

As to Dr. Zyskowski's opinions, the record is unclear what weight, if any, the ALJ gave his opinions prior to the September 2004 functional assessment.  Did he accept his findings in March 2004?  If so, why did not he not address or consider the opinion in March that Plaintiff would have periodic absences from work?  This is error which requires a remand.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'[A]n ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight'") (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)).

As to the decision to reject Dr. Zyskowski's September 2004 functional assessment, the ALJ relied on the fact that it was inconsistent with his earlier findings in March 2004.  The ALJ is referring, in part, to the March letter written by Dr. Zyskowski that found Plaintiff could generally work full time (albeit with some absences).  As to that letter, the ALJ acknowledged that Plaintiff testified that she asked him to write the letter to assist her in her efforts to work.  However, the ALJ speculated that the physician would not have written this letter if he did not believe it.  This was improper.  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'") (emphasis in original) (quotation omitted).

Further, while the March letter (Tr. 238) and the September 2004 functional assessment (Tr. 231-36) appear somewhat self-contradictory, the ALJ should have

taken into account the fact that Dr. Zyskowski may simply have changed his mind about Plaintiff's limitations based on her unsuccessful attempts to work between March and September. The record is unclear as to what Dr. Zyskowski based his September findings on, as well as why he wrote the March letter and why there were contradictions in the two opinions. As the ALJ has a duty to fully and fairly develop the record as to material issues, *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993), he should have contacted Dr. Zyskowski on this issue rather than engaging in improper speculation.

Further, the September assessment was not entirety inconsistent with the March 2004 letter—Dr. Zyskowski opined in both that Plaintiff would be absent from work intermittently. The ALJ failed to recognize this and failed in stating why he did not accept that limitation in the RFC. The ALJ also rejected the September 2004 assessment as not being consistent with "other medical source evidence" (Tr. 23) but failed to identify what evidence he was referring to. Finally, he failed to discuss or explain the fact that this assessment was consistent with other evidence in the record, including Plaintiff's testimony and the opinion of Dr. Eady.

Even when an ALJ decides that a treating physician's opinions are not entitled to controlling weight, that does not allow him to reject their opinions outright. *Langley*, 373 F.3d at 1120. Instead, their opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). The ALJ's decision does not reflect that he gave deference to the treating physician's findings and weighed them, or that he gave "any consideration of what lesser weight the opinion

should be given or discuss[ed] the relevant factors set out in [42 U.S.C.] § 404.1527."
*Id.* This also is error that requires a remand.

### 3.    Whether the ALJ Erred at Step Two

Plaintiff also argues that the ALJ erred by determining at step two that Plaintiff's irritable bowel syndrome ["IBS"] and depression were not "severe" impairments. According to the Tenth Circuit, "[s]tep two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. 2004) (quotation omitted).  "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley*, 373 F.3d at 1123); *see also Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997).  In order to make this showing, it must be demonstrated that a particular impairment has "more than a minimal effect" on a claimant's ability to work.  *Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988).

Plaintiff argues that the record in this case indicates that her IBS and depression are more significant than the ALJ found them to be.  I agree, and find that the ALJ's findings on these impairments are not supported by substantial evidence.  As to Plaintiff's IBS, the ALJ recognized this she had "longstanding irritable bowel syndrome," but stated that this is a "lifetime condition and it did not prevent her from fulltime [sic] work through the years."  (Tr. 20.)  However, I agree with Plaintiff that an

impairment need not be independently disabling to be considered "severe." Thus, this was not a proper basis to reject Plaintiff's IBS as a severe impairment.

The ALJ also claimed that there was "minimal reference" in the record to ongoing problems associated with IBS. (Tr. 20.) However, there are no less than ten references in the medical records to IBS and similar gastrointestinal problems. (Tr. 170, 171, 173, 179, 160, 166, 195, 196, 218, 243.) Further, Plaintiff testified that the IBS is "unpredictable. So I can have a bout with my stomach and not be able to you know, even sit at a desk and be on the telephone or do that type of work for any schedule that's required of me. Because I don't know from one morning to the next how I'm going to feel." (Tr. 288.) She also testified that the IBS would at times keep her from her desk for long periods when she needed to be there to answer the phone. (*Id.* 295-296.) The record does not show that the ALJ considered this evidence. The case must be remanded so that the ALJ can properly assess whether Plaintiff's IBS is severe, *i.e.*, whether it had more than a minimal effect on Plaintiff's ability to work.

As to Plaintiff's depression and anxiety, the ALJ stated that "the evidence is lacking in psychiatric signs – i.e, medically demonstrable phenomena that indicate specific psychological abnormalities." (Tr. 20.) However, this ignores the evidence in the record regarding the diagnoses of depression and anxiety and symptoms that may be attributed to same, such as tearfulness, flat affect, problems sleeping, and problems with memory and concentration. (*See*, e.g., Tr. 113-114, 133, 140, 145, 153-154, 157, 176-177, 237, 268.) "A psychological opinion . . . 'may rest either on observed signs or on psychological tests.'" *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759, 2005 WL

-17-

2114163 (10th Cir. 2005).  Further, the record shows that Plaintiff has been prescribed multiple medications for depression and anxiety.  The record also documents observed depression, tearfulness and lack of progress despite continued medication management, as discussed in the transcript citations above.  This evidence was not adequately considered by the ALJ.

While the Commissioner argues that the records showed Plaintiff was pleasant, fully oriented, and that she displayed no cognitive problems (Tr. 221, 244, 253), this is not necessarily dispositive on the issue of depression.  There is no evidence or authority that the fact a person is pleasant and fully oriented means he or she is not depressed.  The Commissioner is not entitled to substitute his own medical judgment for that of mental health professionals.  *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).  Further, in making this argument the Commissioner ignores portions of those medical records that do not support his position.[6]  This selective application of the evidence is improper.  *Lee*, 2004 WL 2810224, at *3 n. 2.  Finally, while the Commissioner argues that the ALJ properly considered that the only treatment Plaintiff sought for her depression was medication, this ignores the fact that Plaintiff also sought treatment from her physicians for this problem.

---

[6]  For example, while one record states that Plaintiff's mood and cognitive function appear normal, it also states that Plaintiff's "[a]ffect is a little flattened" and refers to a history of "memory loss, anxiety, some depression, and difficulty falling asleep." (Tr. 244.)  Similarly, another record the Commissioner cites to shows that while Plaintiff's cognitive function appears normal, her affect is somewhat flat, her sleep pattern is poor, Plaintiff was intolerant to several medications, and her anti-depressant medications were being switched due to same. (*Id.* 253.)  This also suggests that Plaintiff was not properly responding to the medication related to her depression, contrary to the Commissioner's argument.

Additionally, I agree with Plaintiff that the ALJ is required to "consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe medical disability." *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991). It does not appear that the ALJ considered the combined effects of Plaintiff's impairments when determining that Plaintiff's IBS and depression were not severe.

Based on the foregoing, I find that the ALJ's findings at step two regarding Plaintiff's IBS and depression are not supported by substantial evidence and that he did

not properly assess whether these impairments are severe. Accordingly, I find that a remand is proper on this issue so that these impairments can be properly evaluated.

IV.   CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated November 16, 2007

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge